CHIEF JUSTICE GRAY,
dissenting.
¶18 I respectfully dissent from the Court’s decision that particularized suspicion supported the investigatory stop in this case. I would reverse the District Court and remand for further proceedings.
¶19 The Court correctly states, the statutory standard for an investigatory stop in Montana as “observ[ations] in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.” See § 46-5-401(1), MCA. I also agree entirely with the Court that particularized suspicion can arise from a trained law officer’s inferences and deductions, drawn from objective facts and circumstantial evidence, that suggest some sort of criminal activity and that the required suspicion does not deal with hard certainties, but with probabilities. See Gopher, 193 Mont. at 192, 631 P.2d at 295 (citation omitted).
¶20 The statute and our jurisprudence are clear that one must have particularized suspicion of the person or vehicle subjected to the investigatory stop. Here, that person is Thomas, not Meis. The information regarding Thomas which was available to Officer Turner at the time he initially approached the truck and questioned the occupant-as the record reflects and the Court states at ¶¶ 4-7-was that the vehicle was parked; the woman in the truck looked away from him as he passed; the vehicle’s occupant was Thomas; Thomas was on probation; the vehicle was parked for at least five minutes; and Thomas engaged in “furtive movement’-defined by the officer as appearing to be reaching for something or trying to hide something-when Officer Turner drove by the second time. That was the sum and substance of the information Officer Turner possessed which related in any way to Thomas at the time he approached the truck and questioned her. It is that information that either does, or does not, constitute particularized suspicion to make an investigatory stop.
*156 ¶21 It is my view that this information falls far short of being sufficient to meet the particularized suspicion standard. The Court brushes past this information and proceeds to information the officer obtained after he made the initial investigatory stop. Relying on post-stop information, such as the information here from the probation officer and the probation officer’s request that the officer search the vehicle, totally overlooks the fact that the initial contact-the investigatory stop-had already been made. In essence, it seems to be an “ends justify the means” approach. I cannot join the Court in such a result, which apparently is premised on an individual’s duties (whether on probation or not) to turn and face a passing law enforcement officer, park for less than five minutes in a lawful parking place, and refrain from reaching for something in the vehicle or making some other movement as an officer is passing by.
¶22 I dissent from the Court’s opinion.
JUSTICE NELSON joins in the foregoing dissenting opinion of CHIEF JUSTICE GRAY.